FILED
CLERK, U.S. DISTRICT COURT

17 OCT 03 AM 10: 07

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| NACOLE BRINKERHOFF, | **MEMORANDUM OPINION AND ORDER** |
| Plaintiff, | |
| vs. | Case No. 2:03-CV-00075DB |
| REMINGTON ARMS COMPANY, INC., n/k/a/ SPORTING GOODS PROPERTIES, INC. and E.I. DU PONT DE NEMOURS & CO., | Judge Dee Benson |
| Defendants. | |

## I. Introduction

Before the Court is defendants' motion to dismiss made pursuant to Federal Rule of Civil

Procedure 12(b)(6).[1] Defendant argues that plaintiff's complaint is time-barred because Utah

Code Ann. § 78-15-3 requires that product liability claims, such as the one in this case, be

brought within two years of when a party knows of his or her injury and knows, or in exercising

reasonable diligence should have known, of the possible cause of the injury. Plaintiff argues that

the "discovery rule" and "fraudulent concealment doctrine" excuse the six-year delay from the

time of her injury in bringing her claim. Plaintiff asserts that even though her injury was

immediately obvious, she had no way of knowing its cause until much later. Defendants argue

---

[1] The parties have stipulated that the Court should treat the motion to dismiss as a motion for summary judgment under Federal Rule of Civil Procedure 56 because affidavits and deposition transcripts have been submitted as evidentiary support of the arguments made by the parties in their respective briefs. The Court will do so.

that neither the discovery rule exception to the statute nor the fraudulent concealment doctrine are applicable to this case. Defendants contend plaintiff's six year delay in filing this action cannot be excused. The Court, having considered the parties' briefs, oral arguments and the relevant law, issues the following Memorandum Opinion and Order.

## II. Background

On October 22, 1994 plaintiff, a twenty one year old woman, and her brother, Jode Wall, had returned to their vehicle after a cold and unsuccessful morning of deer hunting. Plaintiff's brother set his loaded rifle, a model 700 Remington, on the front seat of the vehicle on the driver's side, pointed at the passenger door. Plaintiff stood outside of the vehicle on the passenger's side and was attempting to remove her hunting coveralls. Plaintiff's brother was planning to get out of the truck to help his sister. He remembered the rifle was loaded and decided for safety reasons to unload it before leaving the vehicle. Both plaintiff and her brother had taken a hunter safety course and considered themselves experienced and safe users of hunting rifles. Suddenly, as plaintiff's brother attempted to unload the rifle, it discharged and the bullet passed through the closed passenger door and struck plaintiff's leg. Plaintiff's brother told her that the rifle had discharged without him pulling the trigger. With no one else around to help them, they applied a tourniquet to the wound and drove 60 miles to the nearest hospital where plaintiff received medical attention. Plaintiff's brother repeatedly said he did not pull the trigger when the rifle discharged. In fact, he told the plaintiff he thought for an instant that the discharge may have come from another hunter's rifle.

Plaintiff admitted in her deposition that as of the day of the accident, based on her hunter safety training and general experience with rifles, she knew that if a firearm discharged without

2

the trigger being pulled, there would be cause to think the firearm may be defective.  Also, on the day of the accident and thereafter the plaintiff believed her brother was being truthful when he told her he had not pulled the trigger.  On that day and the following day, plaintiff's father told her that the rifle could not discharge unless the trigger was pulled.  However, the rifle in question had discharged without the trigger being pulled some years before when plaintiff's father, *himself*, was using it to hunt in Canada.[2]  The Duchesne County, Utah sheriff's office concluded in its report of the accident that plaintiff's brother accidently pulled the trigger.  Plaintiff learned this from speaking to a clerical worker at the sheriff's office, but did not speak to the officer who authored the report.  Plaintiff's brother has always maintained that he did not pull the trigger when the rifle discharged.

Despite believing that her brother was telling the truth when he insisted that he had not pulled the trigger and knowing that if a rifle discharged without the trigger being pulled there is cause to think something may be wrong with it, plaintiff did not conduct any investigation during the two years following the accident to determine if something was wrong with the rifle.  The full extent of plaintiff's inquiry as to the cause of the rifle's discharge in the two years following the accident, consisted of her two conversations with her father on the day of and the day after the accident, her conversation with the sheriff's office clerk approximately two weeks after the accident, and her conversations with her brother immediately after the accident.  She did not have the rifle inspected by a gunsmith or firearms expert in those two years.  Although she knew the rifle was manufactured by Remington, she did not contact the defendants in this case, nor did the

---

[2]  Apparently, plaintiff's father did not tell plaintiff about this prior incident on the date of the accident nor in the ensuing two years after the accident, but he did mention the incident to plaintiff's attorney six years later.

defendants contact her during those two years.  Furthermore, she did not consult with an attorney during those two years to discuss a possible cause of action.

On July 17, 2001, plaintiff watched on television a *CBS Nightly News* investigative report.  The subject of the report was a possible defect in model 700 Remington rifles like the one involved in the accident of October 22, 1994.  Plaintiff, thereafter, contacted an attorney to pursue a product liability lawsuit against Remington and the associated defendants in this case.  In February 2002[3], the rifle was tested by Remington technicians at a Remington facility in Texas.  During the test the rifle misfired.  The instant action was filed on December 26, 2002.

### III. Discussion

#### A.    Standard of Review

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c).  The Court construes all facts and reasonable inferences in the light most favorable to the nonmoving party.  *See Mastsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1968).  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Clifton v. Craig,* 924 F.2d 182, 183 (10th Cir. 1991).  Preliminarily, it appears that plaintiff argues that a summary dismissal in this case would be inappropriate because courts have generally held that in a product liability case such as the instant case, which necessarily implicates the discovery rule, the question of when a plaintiff knew or with diligence

---

[3] Plaintiff asserts in her brief that this test took place in February 2002.  Therefore, the Court assumes the test occurred prior to when this lawsuit was filed in December 2002.

4

should have known of a possible cause of action is always a question of fact for a jury to

determine. The defendants argue that plaintiff's position is over broad. The Court agrees with

defendants. In similar cases brought in this Circuit which involved product liability claims and

the discovery rule, summary judgment has been found to be appropriate if the evidence is such

that no genuine issue of material fact exists. Summary judgment is appropriate in this case and

any other product liability case if it is found by the Court that no genuine issue of material fact

exists. *See Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1388 (10th Cir.1985); *McKinnon v.*

*Tambrands, Inc.,* 815 F.Supp. 415,418 (D.Utah 1993); *McCollin v. Synthes, Inc.,* 50 F.Supp.2d

1119, 1123 (D.Utah 1990).

**B.     The Statute**

The Utah statute of limitations that applies to defective product claims and specifically to

this case is Utah Code Ann. § 78-15-3, which states: "[a] civil action under this chapter [of the

Products Liability Act] shall be brought within two years from the time the individual who would

be the claimant in such action discovered, or in the exercise of due diligence should have

discovered, both the harm and its cause." The plain language of the statute implicates the

discovery rule because it explicitly tolls the running of the two year period until the harm and its

cause are, or should have been, discovered.

**C.     Notice of the injury and its cause**

The issue before the Court is notice. The Court, based on the plain language of the

statute, must determine when the plaintiff had notice or, in exercising due diligence, should have

had notice of her injury and its possible cause. It is from this date that the two year statute of

limitations was triggered in this case.

There is no doubt from the evidence in this case that plaintiff had notice of her injury the very instant the bullet struck her leg on the morning of October 22, 1994. This is undisputed.

Plaintiff contends she did not have notice of the cause of her injury until six years later when she watched a *CBS Nightly News* program. Plaintiff also argues, presumably, that she could not reasonably have earlier determined the cause of her injury through the exercise of due diligence, or that she did exercise due diligence, and it was only through watching this program on television that she had notice of the cause of her injury. That program featured a possible defect in model 700 Remington rifles such as the one at issue in this case that could cause the rifle to discharge, or "misfire" without the trigger being pulled. Plaintiff asserts that she did not have all of the facts necessary to bring a legal claim against defendant until she saw this program on July 17, 2001. Accordingly, plaintiff argues that under the discovery rule she brought her case within the applicable statute of limitations.

Under Utah law, "[a]ll that is required [to trigger the statute of limitations] is ... sufficient information to apprise [the plaintiffs of the underlying cause of action] so as to *put them on notice* to make further inquiry if they harbor any doubts or questions... ." *United Park City Mines Co. v. Greater Park City Co.,* 870 P.2d 880, 889 (Utah 1993) (emphasis added). *See also Macris v. Sculptured Software, Inc.,* 24 P.3d 984, 990 (Utah 2001). Utah law provides that "[t]he discovery rule does not apply to a plaintiff who becomes aware of his injuries or damages and a *possible* cause of action before the statute of limitations expires." *Atwood v. Sturm, Ruger, & Co.,* 823 P.2d 1064, 1065 (Utah 1992) (emphasis added). This court has found "[t]he discovery rule does not allow plaintiffs to delay filing suit until they have ascertained *every last detail* of their claims." *McCollin v. Synthes, Inc.,* 50 F. Supp.2d 1119, 1124 (D.Utah 1999) (emphasis

6

added). *See, e.g. McKinnon v. Tambrands, Inc.,* 815 F.Supp. 415, 421 (D.Utah 1993) (the applicable statute of limitations begins to run when a plaintiff is alerted to a *possible* cause of action) (emphasis added).

Plaintiff cites to many undisputed facts in this case in an effort to explain why she did not pursue a possible claim against defendant during the two years immediately following her injury on October 22, 1994. For instance, her father told her that guns only fire when the trigger is pulled. Also, a sheriff's office clerk told her that the report of the incident concluded her brother accidently pulled the trigger. She claims it was only upon seeing the news program that she discovered sufficient facts that caused her to believe the cause of her injury might be related to a defect in the rifle. These facts are insufficient to support plaintiff's assertion that she lacked the information necessary to pursue her present claims within the two years following her injury.

The information the plaintiff had prior to watching the television program was sufficient to put her on notice that a defective rifle may have been the cause of her injury. Plaintiff has testified that her brother told her on at least one occasion on the day of the accident that he did not pull the rifle's trigger. Plaintiff also admits, and it is undisputed, that her brother has always maintained, even in the face of a reprimand by their father on more than one occasion, that he did not pull the trigger when the rifle discharged. Furthermore, plaintiff testified that based on her training and experience with regard to firearms that she would have cause to think something was wrong with a firearm that discharges without the trigger being pulled. Plaintiff has also testified

that she believed her brother when he said he did not pull the trigger.  Plaintiff also knew

Remington was the manufacturer of the rifle.[4]

Under these circumstances, the discovery rule does not excuse plaintiff's six year delay in

filing this cause of action.

### D.      Fraudulent Concealment – Estoppel

Plaintiffs also argue that defendants should be estopped from invoking a statute of

limitations defense because defendants, in 1979, decided not to issue a recall of model 700

Remington rifles when a possibility existed that approximately one per cent of such rifles may

have had a defect.  Under the clear facts of this case and the law on point, the Court finds this

argument to be without merit.

A plaintiff relying on the fraudulent concealment doctrine as a means to defeat a statute

of limitations defense is required to show: 1) a claim was not filed in a timely manner "on the

basis" of defendant's conduct; and 2) the plaintiff's inaction was "reasonable under the

circumstances."  *See McKinnon,* 815 F. Supp. at 422.  Plaintiff has not made either showing.

It is undisputed that plaintiff had no contact with defendants during the two years after

October 22, 1994.  Defendants did not make any representations to plaintiff on which she relied

in the pursuit, or lack thereof, of her claim.  It is also undisputed that once plaintiff filed the

---

[4]   The Court finds persuasive *Snell v. Columbia Gun Exchange, Inc.,* 278 S.E.2d 333
(1981) (S. Car. Sup. Ct.).  In that case the plaintiff was injured by an accidental discharge of a
firearm.  That court found that an injured party in those circumstances should know that a
product defect claim "might exist," and held that the "statute of limitations begins to run from
this point and not when advice of counsel is sought or a full-blown theory of recovery is
developed."  *Id.* at 334.  The Court stated: "Where as here a pistol accidentally and unexplainedly
discharges causing injury, the injured party or his representative is *thereby placed on notice* that a
defect in the weapon is possible.  *From that point on, reasonable diligence is required to
determine if a cause of action may exist.*"  *Id.* at 335 (emphasis added).

instant action, defendants agreed to test the rifle in question and admitted that it misfired. Defendants did nothing to justify plaintiff's failure to bring this cause of action within the two year statute of limitations.

The decision made by defendant 15 years before the date of the accident not to conduct a recall of its rifles does not rise to concealment as contemplated by the fraudulent concealment doctrine.  Even if it did, however, this "concealment" did not prevent defendant from ascertaining the cause of her injury as discussed above.  It is undisputed that plaintiff was always free to have the rifle tested.

### IV.  Conclusion

Based on the foregoing, the Court GRANTS defendants' motion for summary judgment. Plaintiff's claims are DISMISSED with prejudice.  IT IS SO ORDERED.


DATED this 16th day of October, 2003.


Dee Benson
United States District Court Judge


9

                                                          kvs
                    United States District Court
                              for the
                         District of Utah
                        October 17, 2003


              * * CERTIFICATE OF SERVICE OF CLERK * *


Re:  2:03-cv-00075


True and correct copies of the attached were either mailed, faxed or e-mailed
by the clerk to the following:


        Mr. Rodney R Parker, Esq.
        SNOW CHRISTENSEN & MARTINEAU
        10 EXCHANGE PLACE
        PO BOX 45000
        SALT LAKE CITY, UT  84145-5000
        EMAIL

        Dale G. Wills, Esq.
        SWANSON MARTIN & BELL
        330 N WABASH AVENUE SUITE 2900
        CHICAGO, IL  60611

        Roger J. McConkie, Esq.
        PRINCE YEATES & GELDZAHLER
        175 E 400 S STE 900
        SALT LAKE CITY, UT  84111